**MINTZ AND GILLER**
A Law Corporation
By: James Giller, Esq. (SBN: 028084)
405 - 14th Street, Suite 1008
Oakland, California 94612
Telephone: (510) 451-6686
Facsimile: (510) 451-4820

Attorney for Defendant,
GERALD STAHL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO VENUE

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | DOCKET NO. CR 07-0299-01 MMC |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| -vs- | |
| GERALD STAHL | |
| Defendant _____/ | |

    Defendant Gerald Stahl was charged in a one count Indictment which was filed on May 15, 2007 in the Northern District of California charging him with a violation of 18U.S.C. §474:possesion of counterfeit obligations or securities with intent to sell or use. On September 19, 2007 the defendant pled guilty to the Indictment.

    There was no plea agreement in this matter, and judgement and sentencing are currently set for February 6, 2008. Defendant was released on a $50,000 unsecured bond and has been under the supervision of the U. S. Pretrial Services since June 5, 2007.

    Defendant was arrested as a result of a joint investigation between the Sonoma County Sheriff's Office and the United States Secret Service. These agents conducted a search of his home in Forrestville, California based on information that was received from an informant who had been arrested on charges of burglary. The informant had informed the police that he was aware of someone in Forrestville, California making counterfeit bills. This information apparently corroborated other information obtained from another suspect who had asked to remain anonymous. The informant told the officers that Mr. Stahl had sold counterfeit bills. He stated that he saw various denominations at Mr. Stahl's residence and gave the officers other information about what he had seen and what processes Mr. Stahl was using to make counterfeit bills. The officers during the course of their search discovered approximately $61,000 in counterfeit funds in different denominations. They also discovered paraphernalia that could be used to make counterfeit money. At the house at the time of the search was Mr. Stahl's

1

girlfriend Claudia Castello who he lived with, and has just recently on January 7, 2007 had their baby.

One of the informants apparently told the police that he had seen counterfeit funds in Mr. Stahl's possession and he traded some pornographic videos for $200 in twenty dollar bills. The informant then allegedly sold his twenty dollar bills to some other person for $4 each. This particular informant said that he purchased gas at a Chevron gas station using one of the counterfeit funds he received and some other funds in the amount of approximately $60 was transferred to another individual. He allegedly got a hit of methamphetamine for his assistance in the introduction. All of this is hearsay.

The officers had gotten reports that in the area some of the bills were being passed and the probation officer lists in her report the various reports the officers got but it should be remembered that the total amount of money that was discovered was a loss of $640. No foundation has been laid to show that there is an amount of $15,000 that was distributed by Mr. Stahl and was part of his activities. This money if truly was in circulation was not tied to Mr. Stahl by any reliable evidence.

## HEARSAY EVIDENCE AT SENTENCING

In making factual determinations, a sentencing judge is generally not restricted to evidence that would be admissible at trial. *United States v. Hopper*, 27F.3d 378, 382 (9th Cir. 1994). However, "inadmissible evidence cannot be considered [at sentencing] if it lacks sufficient indicia of reliability to support its probable accuracy. *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.), as amended by 922 F.2d 1015 (9th Cir. 1993). A defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information. Due process requires that some minimal indicia of reliability accompany a hearsay statement."). This requirement demands extrinsic corroborating evidence that supports the hearsay statement. *United States v. Hopper*, supra. Unreliable allegations shouldn't be considered. *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971).

## OBSTRUCTION OF JUSTICE

The Probation Officer alleges in her report that Mr. Stahl and others ambushed the informant in this case and referred to him as a snitch and a rat and caused physical harm to him. This information is hearsay and I can not tell from the Probation Officer's report whether she has ever talked to the informant, or whether or not she has seen the letter or statement that was allegedly was written by a Ms. Gardone. It would seem that this is all hearsay and should be considered by the court as hearsay information and not be considered for purposes of sentencing or adding two points unless the court is convinced that this is reliable hearsay information.

## SPECIFIC OFFENSE CHARACTERISTICS

The Probation Officer sets out a report that the $61,000 of counterfeit funds were discovered at the defendant's residence and an additional $15,170 was found to have entered

2

circulation making a total face value of $76,170. There is no question that the $61,000 which was discovered was in existence because the police found it while executing a search warrant. It would seem that the additional $15,170 is strictly hearsay information and no foundation that has been laid to show that is the exact amount of money that was entered into circulation or how it was determined to be that amount of money or how it is tied to Mr. Stahl. The defendant submits that this $15,170 should not be considered in determining what the total loss or face value was and the offense level should not be raised. It should be six points and not eight points under USSG §2b5.1(b)(1)(B), and USSG §2b1.1(b)(1)(e).

PERSONAL HISTORY

The Probation Officer has written an accurate summary of defendant's history and background. Defendant does not have much contact with his father and his mother does work and drives a diesel truck. He has three siblings two of whom have mental health issues and receive SSI. His other sister is apparently alright and is regularly employed with no mental health issue.

Defendant does indicate that he really regards Mr. Bower who was his mother's boyfriend who lived with him for approximately ten years as his real father. This man raised him and Mr. Stahl had little or no contact with his biological father.

As pointed out Mr. Bower and Mr. Stahl's mother had two children and those two children died in a house fire and everything in Mr. Stahl's life changed after that. His mother had somewhat of a drug problem and even his siblings today have a drug problem. After Mr. Bower, his mother married Mike Fry and they were married for approximately ten years. Mr. Stahl did spend time in various foster homes over the years and eventually came under the care of his neighbor.

Mr. Stahl has not been married and has been in a relationship with Claudia Castello for several years. As mentioned above they had a baby who was born by Caesarean on January 7, 2008.

Mr. Stahl is well aware that he is going to receive a prison sentence in this case and per agreement with the pretrial service officer and Magistrate Judge Zimmerman at the day of sentencing he will surrender to the court to be incarcerated on that day.

Mr. Stahl's physical condition is not the best, he was in a car accident several years ago and to this day he still has a lot of back pain which prevents him from really working and doing any kind of manual labor. As indicated in the probation report he takes medication for the back pain and had gotten a medical marijuana card and was using it up until Judge Zimmerman, because of the federal law, ordered him not to take marijuana. That marijuana had been very helpful in easing his pains but he has discontinued it.

As indicated in the probation report Mr. Stahl has used drugs including methamphetamine and cocaine since an early age and we are requesting that the court

recommend that he be placed in a drug program while in prison.

## OBJECTIONS

As the Probation Officer correctly points out in her probation report she did not receive any response from me setting out any objections I had to her report. At the time the report was submitted I was in a very lengthy murder trial that lasted approximately seven weeks. The defendant was facing life without parole in that trial. Although I gave a copy of the Probation Report to my client I did not have time to research the few objections that I have made here as to the obstruction of justice issue and the amount of loss.

I did have a discussion with the Probation Officer about the amount of loss over the telephone prior to her report and indicated that I thought it was only $61,000 and she said she was going to discuss it with the U. S. Attorney Ms. Weber to see whether it was $61,000 or $15,000. I did not have a chance to discuss this with her any further about the amount that she submitted with the report.

DATED: January 30, 2008                    Respectfully submitted,

                                          MINTZ AND GILLER
                                          A Law Corporation

By:     __S/_____
        James Giller
        Attorney for Defendant, GERALD STAHL